UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHAD FARLEY and JESSICA FARLEY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No.: 3:22-CV-127-TAV-DCP ) |
| WAYNE POTTER et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Todd White's[1] motion for summary judgment [Doc. 71] and plaintiffs' motion to strike the affidavit in support of defendant's motion [Doc. 86]. Plaintiffs have responded in opposition to summary judgment [Doc. 107], and defendant has replied [Doc. 124]. This matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court will **DENY** plaintiffs' motion to strike [Doc. 86] and **GRANT** defendant's motion for summary judgment [Doc. 71].

**I.     Background**[2]

Plaintiffs allege that defendant committed multiple constitutional torts actionable under 42 U.S.C. § 1983, including a Fourth Amendment unlawful search, a Fourth Amendment unlawful seizure, and a Fourteenth Amendment destruction of evidence claim. These

---

[1] Because White is the only relevant defendant for these pending motions, the Court will simply use "defendant" to refer to White throughout this memorandum opinion and order.

[2] The Court presumes familiarity with plaintiffs' other allegations against numerous co-defendants as summarized by Judge Poplin's Order and Report and Recommendation entered on February 2, 2023 [Doc. 21]. Only those facts related to White's alleged involvement in the incident at issue are summarized here.

allegations arise out of the joint execution of an arrest warrant by the Morgan County Sheriff's Department ("MCSD") and the Wartburg Police Department on April 14, 2021 [Doc. 71-1, pp. 4–5].

On April 14, 2021, defendant, a Wartburg Police Officer, was instructed by Wartburg Police Chief Teddy Bales to assist the MCSD in executing an arrest warrant on Chad Farley at his residence located at 212 Victoria Lane, Lancing, Tennessee [Doc. 71-1, p. 1; Doc. 71-2, p. 1]. The arrest warrant related to domestic assault charges based on MCSD's interview with Chad's wife, Jessica Farley[3] [Doc. 71-1, pp. 4–5]. Specifically, Jessica claimed that Chad had physically assaulted her at home on April 10, 2021 [Doc. 71-1, p. 4]. Although defendant was not provided with a copy of this arrest warrant, he immediately complied with Chief Bales's order and drove his squad car to plaintiff's property to prevent non-law enforcement from entering the property [Doc. 71-1, p. 2].

After arriving at plaintiffs' property, defendant was instructed by another MCSD Deputy to enter the main building [Doc. 71-1, p. 2]. Defendant complied and found that MCSD personnel had already entered the building prior to his arrival [*Id.*]. According to Chad, the first officers to enter before defendant did so without knocking or announcing their intent to execute a warrant for his arrest [Doc. 108, p. 2]. After entering, MCSD Deputy Mike Wren instructed defendant to assist with the ongoing task of searching for weapons [Doc. 71-1, p. 2]. Defendant complied by searching upstairs, but he only observed items in plain view and

---

[3] For the sake of clarity, the Court will refer to Chad Farley and Jessica Farley by their first names in this memorandum opinion and order.

2

Case 3:22-cv-00127-TAV-DCP   Document 148   Filed 09/05/24   Page 2 of 9   PageID #: 1441

did not seize any items [Doc. 71-1, pp. 2–3].  Prior to, during, and after his entry onto plaintiffs' property, defendant had no contact with Chad or Jessica whatsoever [Doc. 71-1, p. 3].

On July 1, 2021, Chad pleaded guilty to simple assault and received a sentence of 24 months in the Morgan County Jail [Doc. 71-1, p. 6].  The General Sessions Court of Morgan County further ordered that all firearms seized at plaintiff's property on April 14, 2021, be forfeited [*Id.*].

On April 11, 2022, plaintiffs commenced this civil action against 26 defendants, including Officer White [*See* Doc. 1].  Plaintiffs maintain that defendant individually violated their Fourth Amendment rights by unlawfully searching the property at 212 Victoria Lane and unlawfully seizing firearms [Doc. 71-4, p. 8].  Additionally, plaintiffs allege that defendant's bodycam footage "has either been destroyed or concealed" [*Id.*].

**II.      Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56 is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  Furthermore, all facts and inferences that the Court draws from the record before it must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

III. Analysis

A. Motion to Strike

As a preliminary matter, the Court will **DENY** plaintiffs' motion to strike [Doc. 86]. Motions to strike "are disfavored, and typically only apply to pleadings, not evidentiary offerings such as affidavits." *Agent v. Buffalo Valley, Inc.*, No. 1:13-0133, 2015 WL 1756891,

4

at *1 (M.D. Tenn. Apr. 17, 2015); *see also Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) (holding that attachments to dispositive motions, unlike motions themselves, are beyond the scope of a court's discretion to strike under Fed. R. Civ. P. 12(f)). Plaintiffs assert that defendant did not provide a "fulsome answer" in discovery and his attached declaration is therefore "litigation trickery" [Doc. 86, p. 4]. But rather than "litigation trickery," the new material contained in defendant's deposition appears to be a result of plaintiffs' failure to rigorously question defendant at the outset. Plaintiffs did not depose defendant and did not raise objections to his responses to written interrogatories. A party who "was not rigorously questioned" during discovery "was under no obligation to volunteer additional information at that time, and so is not constrained by h[is] [original] testimony." *Agent*, 2015 WL 1756891, at *1. For these reasons, plaintiff's motion to strike [Doc. 86] is **DENIED**.

### B. Motion for Summary Judgment

#### 1. Qualified Immunity

Defendant argues that he is entitled to summary judgment under the doctrine of qualified immunity [Doc. 72, p. 17]. Defendant points to plaintiffs' failure to cite sufficiently specific binding precedent that "would have put Officer White on notice" that his actions—obeying orders from commanding officers under the belief that a valid warrant existed—could lead to constitutional violations against the plaintiffs [Doc. 72, p. 18]. Plaintiffs respond by citing caselaw that generally disfavors entry into a person's home under the Fourth Amendment [Doc. 107, p. 20].

Where warranted, the doctrine of qualified immunity shields a law enforcement officer, sued in his individual capacity, from suit under Section 1983. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the familiar test for qualified immunity, a public official is immune from suit unless the plaintiff establishes: (1) a constitutional violation; and (2) that the right at issue was 'clearly established' when the event occurred." *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021) (citation omitted); *see also Pearson*, 555 U.S. at 231. "If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages." *Gordon*, 20 F.4th at 1082 (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)). *Pearson* also held that "judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236.

For the right at issue to be "clearly established, existing precedent" at the time of the alleged constitutional violation, binding precedent "must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 77 (2017)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "Specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id.* (cleaned up). To overcome qualified immunity, a plaintiff must either "identify a case that put [the officer] on notice that his specific conduct was unlawful" or show

6

that this is an "obvious case" where the prevailing standards "'clearly establish' the answer, even without a body of relevant case law." *Id.* (citations omitted).

Defendant is entitled to qualified immunity because plaintiffs have failed to demonstrate that his alleged constitutional violations contradicted "clearly established, existing precedent." *Rivas-Villegas*, 595 U.S. 1 at 5. Once defendant invoked the doctrine of qualified immunity, plaintiffs bear the burden of identifying binding precedent that addresses the specific factual context of this case. To this end, plaintiffs cite six cases, none of which involved a sufficiently similar factual situation [Doc. 107, p. 20].

Upon careful review of the record, plaintiffs provide no citation sufficient to show that defendant violated "clearly established" law in this context; to the contrary, the cited case law focuses on issues unrelated to defendant's alleged violations. Taking plaintiffs' citations in turn, *United States v. U.S. Dist. Ct. for E. Dist. of Mich., S. Div.*, 407 U.S. 297 (1972) addressed national security surveillance with respect to the warrant requirement. *Richards v. City of Jackson*, 788 F. App'x 324 (6th Cir. 2019) dealt with a police officer killing the defendant's dog. *Florida v. Jardines*, 569 U.S. 1 (2013) and *Kyllo v. United States*, 533 U.S. 27 (2001) analyzed whether a drug-sniffing dog or thermal imaging, respectively, fell within the meaning of a Fourth Amendment "search."

Plaintiffs come closest to meeting their burden by referencing *Payton v. New York*, 445 U.S. 573 (1980), which held that the Fourth Amendment prohibits *warrantless* entry into a suspect's home to make a routine felony arrest. But this prohibition only satisfies half of plaintiffs' burden in this context because a valid warrant for Chad's arrest did exist. *Payton* is insufficient precedent to substantiate the proposition that an officer "clearly violates" the

7

Fourth Amendment when he reasonably believes a warrant exists, a valid warrant *does* exist, and he takes undertakes no further search or seizure activities once within the home pursuant to the warrant. The Supreme Court has instructed that the Court's "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau*, 543 U.S. at 198. *Payton*'s holding as applied to this case is simply too "broad" and "general." *Id.*

Stepping outside plaintiffs' arguments directed at qualified immunity and considering their joint response as a whole, plaintiffs provide more factual specificity when arguing that the collective knowledge doctrine did not apply to defendant under these circumstances [Doc. 107, pp. 10–12]. But even when addressing this more factually nuanced issue as to defendant's imputed knowledge of a valid arrest warrant, plaintiffs' solitary citation to *United States v. Lyons*, 687 F.3d 754 (6th Cir. 2012) does not demonstrate "clearly established" precedent in their favor. Instead, *Lyons* held that troopers who were "unaware of all of the specific facts" received the benefit of the collective knowledge doctrine. *Id.* at 768. The *Lyons* court also instructed district courts applying collective knowledge to focus on "the investigating officer's actions and knowledge, rather than on the quantity or quality of information supplied to the responding officer," which only bolsters defendant's position in this case. *Id.* at 769. For the same reason, this line of argument will not satisfy the "obvious case" exception to "clearly established" precedent. *See Rivas-Villegas*, 595 U.S. at 5.

Because the Court concludes that no "clearly established" law put defendant on notice that his conduct was unconstitutional, it is unnecessary to reach the merits of the plaintiffs' Fourth and Fourteenth Amendment arguments. *Pearson*, 555 U.S. at 236. Indeed, where one

8

qualified immunity prong is dispositive, opining on the other prong would "depart[] from the general rule of constitutional avoidance." *Id.* at 241. Accordingly, defendant is entitled to qualified immunity, and defendant is therefore entitled to judgment as a matter of law.

Because no material dispute of fact remains (Fed. R. Civ. P. 56(a)) as to whether "clearly established" law existed at the time of the alleged constitutional violation (*Rivas-Villegas* 595 U.S. at 5 (2021)), defendant's motion for summary judgment is **GRANTED**.

### IV. Conclusion

Accordingly, defendant's motion for summary judgment [Doc. 71] is **GRANTED** and plaintiffs' motion to strike the defendant's affidavit [Doc. 86] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE